## Wanner's Estate.

*Decedents' estates—Collateral inheritance tax on life estate.*

The collateral inheritance tax on a life estate is payable by the trustee out of the principal of the fund, but must be restored to the fund out of the first income received.

Exceptions to account. O. C. Berks Co.

*C. G. Derr*, for accountant; *J. B. Stevens*, for exceptant.

SCHAEFFER, P. J., Oct. 27, 1923.—The account is before the court on petition of Harvey H. Rothermel, the *cestui que trust*, citation, answer and the order of the court, directing the trustee to file the account. It contains the principal fund and income. In the distribution these funds will be kept separate.

Exceptions to the account have been filed by the *cestui que trust*, alleging that the accountant erred in the payment of the collateral inheritance tax, amounting to $74.47, out of the principal fund, and that the credits taken for the costs of filing the account are improper and cannot be allowed.

It appears that on Feb. 27, 1906, the sum of $1943.62 was distributed to the trustee, subject to the collateral inheritance tax, and the said amount was paid to the trustee accordingly. Subsequently, on Aug. 9, 1906, the value of the said *cestui que trust's* life estate, for collateral inheritance tax purposes, was fixed at $1489.35, and the said trustee paid the collateral tax thereon, amounting to $74.47. This tax was paid out of the said principal of $1943.62.

Thereafter the trustee paid to the *cestui que trust* the semi-annual interest on the diminished principal, that is, on the said sum of $1943.62, less the amount paid for collateral inheritance tax. The *cestui que trust* received the income regularly, together with statements showing the administration of the fund, up to 1922, when the *cestui que trust* complained to the trustee about the payment of the collateral tax out of the principal fund instead of deducting it from the income.

The trustee thereupon discontinued to pay the said interest to the *cestui que trust*, retaining the same for replacement of the amount so to be paid for the collateral inheritance tax.

The matter stood thus for a short time, when, at a meeting between the *cestui que trust*, his counsel and the trustee, it was agreed that the trustee should deduct from each semi-annual interest instalment the sum of $5, by way of restoring to the principal fund the amount of the tax, which arrangement would make the restoration complete in about seven and a half years; and that the trustee should at once pay to the *cestui que trust* the interest accrued and which had been retained as aforesaid, deducting the sum of $5, first instalment in pursuance of said agreement.

This adjustment was apparently satisfactory to both sides, and it was not until March, 1923, when the *cestui que trust* again objected to the settlement,

and came into court and asked for a citation on the trustee to file an account, so that the dispute could be legally determined.

The complaint now is that the trustee should have withheld the tax out of the income, instead of paying it out of the principal. There can be no doubt that the tax was paid out of the principal and not replaced immediately from the first income in order to accommodate the *cestui que trust*, and why he should now complain we fail to see. In other words, he finds fault with the conduct of the trustee for having been generous with him, in not appropriating the income for the payment of the tax. This, indeed, is very unusual, in view of the fact that he accepted the income of the reduced principal for almost seven years without protesting, and also in the absence of any complaint by those who will eventually get the fund.

He who seeks equity must do equity, and it would be inequitable, to say the least, to punish the trustee for paying the debt of the *cestui que trust* and for acting in good faith and with a purpose to help and assist him. If the *cestui que trust* insists that the $74.47 be restored to the principal fund, it must be done out of his income. He had the use of the money, and, consequently, should pay it back if he feels the fund should be restored to its original amount.

That the trustee could pay the tax of the principal fund and reimburse itself out of the first income received is well recognized, for in the Estate of S. J. Christian, 18 Phila. 32, it was decided by Judge Ashman that, "When an estate has been left to a collateral relative or a stranger for life, with remainder over, the inheritance tax on the life interest is payable primarily out of the *corpus*, but must be refunded out of the first income received."

After the trustee paid the collateral tax out of the principal fund, he should have withheld the first income and added it to the fund. He, however, paid the income to the *cestui que trust*, who thus received the benefit of it, and now complains because it was paid to him. If the principal is to be restored at this time, it must be done out of the *cestui que trust's* income. "Where moneys have been paid to beneficiaries as income which was really principal, the future accruing income will be withheld until the overpayments are repaid to the estate: Richardson's Estate, 12 Phila. 32.

Again, the arrangement made between the parties that the sum of $5 should be deducted from every semi-annual instalment of interest and added to the principal, was made in good faith and with a full understanding of all the facts in controversy, and, therefore, will be upheld. On the basis of this understanding of the parties, which was not denied at the hearing and which was acted upon, as shown by the items of credit for the first and second instalments of $5 each, this controversy was settled, and, hence, there was no occasion for citing the trustee to file an account.

The exceptions to the credits for costs and fees must, therefore, also be dismissed, because the trustee was not at fault here, and, under the Fiduciaries Act of June 7, 1917, § 46, P. L. 447, 511, it has the right to file its account triennially from the date of its appointment, and to have the same audited and confirmed to date by the court. In filing such account, costs and fees necessarily accrue and must be paid, either out of the principal or income.

The exceptions are dismissed and the account is confirmed. Distribution of the principal sum will be to the trustee for the continued administration of the trust. The income, subject to the deduction of any agreed-upon instalments which may be due of collateral inheritance tax, which, as aforesaid, has been paid out of the principal fund, will be distributed to the *cestui que trust*.

From Wellington M. Bertolet, Reading, Pa.